## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| **SHEILA LYONS,** | ) |
| | ) |
| **Appellant,** | ) |
| | ) |
| **v.** | ) |
| | ) **Appeal No. 2016-2055** |
| **THE AMERICAN COLLEGE OF** | ) |
| **VETERINARY SPORTS AND** | ) |
| **REHABILITATION** | ) |
| | ) |
| **Appellee.** | ) |
| | ) |
| <u>**Cancellation No. 92053934**</u> | ) |

### <u>NOTICE FORWARDING CERTIFIED LIST</u>

A notice of appeal to the United States Court of Appeals for the Federal Circuit was

timely filed on May 12, 2016, in the United States Patent and Trademark Office (USPTO) in

connection with the above-identified cancellation proceeding.  Pursuant to 15 U.S.C. §

1071(a)(3) and Federal Circuit Rule 17(b)(1), the USPTO is today forwarding, to counsel for

Appellant and Appellee, a certified list of documents comprising the record in the USPTO.


Respectfully submitted,

**Michelle K. Lee**
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and
Trademark Office

Date:  June 22, 2016          By: _____

**Krishawn D. Graham**
Paralegal Specialist
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

**TTAB**



# KLIEMAN & LYONS
### COUNSELLORS AT LAW

**ONE INTERNATIONAL PLACE**

EIGHTH FLOOR

**BOSTON, MASSACHUSETTS 02110**

TELEPHONE: 617-443-1000

TELEFAX:    617-608-2828

**DELIVER BY HAND**
**VIA FEDERAL EXPRESS**

Commissioner of Trademarks
Trademark Trial and Appeal Board
Trademark Assistance Center
James Madison Building, East Wing,
Concourse Level Room C55
600 Dulany Street
Alexandria, VA 22314

Re: Board of Directors v. Sheila Lyons, DVM
 <u>Cancellation No. 92053934</u>  —  78635662

Dear Commissioner:

Enclosed please find a copy of the Respondent's Notice of Appeal to the United
States Court of Appeals for the Federal Circuit of the decision of the TTAB of March
17, 2016 in the above referenced matter which has been filed and served in
accordance with 15 U.S.C.§1071(a)(2) and 37 CFR §§104.2, 2.197-198.

Very truly yours,

Stephen J. Lyons
SJL/wp
Encl

cc:     Office of the General Counsel, United States Patent & Trademark Office, 10B20, Madison
        Building East, 600 Dulany Street, Alexandria, VA 22314
        David Kluft, Esquire, Foley Hoag, LLP, 155 Seaport Boulevard, Boston, MA 02210

**05-13-2016**

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

**www.KliemanLyons.com**

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Board of Directors of the American College of Veterinary*
*Sports Medicine and Rehabilitation,*
*Petitioner*
*v.*
*Sheila Lyons, DVM,*
*Respondent*

———

Cancellation No. 92053934

———

### NOTICE OF APPEAL

Pursuant to 15 U.S.C., 1071 § (a)(2) and Title 37 CFR § 2.145(a), the Respondent, Sheila

Lyons, DVM, hereby appeals the decision of the Trademark Trial and Appeal Board in the above

referenced matter dated March 17, 2016 and attached hereto to the United States Court of

Appeals for the Federal Circuit.

Respectfully submitted,
The Respondent,
By her attorneys:

/Stephen Lyons/

———————————————
Stephen Lyons
KLIEMAN & LYONS
One International Place
8th Floor
Boston, MA 02110
Telephone: 617-443-1000
sjlyons@kliemanlyons.com

Dated: May 12, 2016

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 12th day of May, 2016 the foregoing document was filed electronically in accordance with ESTTA and also served upon all parties of record by delivering a copy thereof, by hand, via express mail, to the following counsel of record: David Kluft, Esquire, Foley Hoag, LLP, 155 Seaport Boulevard, Boston, Massachusetts 02210. Copies thereof were also served upon the Office of the General Counsel, USPTO, by delivering a copy thereof, by hand, via express mail to the Office of the General Counsel, USPTO, 10B20, Madison Building East, 600 Dulany Street, Alexandria, Virginia 22314 and to the Commissioner of Trademarks, TTAB, James Madison Building, East Wing, Concourse Level Room C55, 600 Dulany Street, Alexandria, Virginia 22314.

/Stephen J. Lyons

_____

Stephen J. Lyons

> This Opinion is not a
> Precedent of the TTAB

Mailed: March 17, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*The American College of Veterinary Sports Medicine and Rehabilitation[1]*
*v.*
*Sheila Lyons*

———

Cancellation No. 92053934

———

[1] The petition, as originally filed on April 25, 2011, identified as the petitioner, Board of Directors of the American College of Veterinary Sports Medicine and Rehabilitation, "an unincorporated non-profit veterinary specialty organization." 1 TTABVUE. In the Amended Petition for Cancellation, filed almost four years later, Petitioner identified itself in the caption as The American College of Veterinary Sports Medicine and Rehabilitation, a Colorado nonprofit corporation, 21 TTABVUE. This entity was incorporated in June 2011. Gillette Decl. ¶ 22, 26 TTABVUE 35. Because the corporate Petitioner is the successor in interest to the former unincorporated association, we have substituted the corporation as the party plaintiff. *See generally Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916, 921 (E.D. Wis. 2009) (quoting 8 W. M. Fletcher, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 4004: "The incorporation of a voluntary association, if the act of the association and not the unauthorized step of some of its members, merges the association in the corporation, and its property becomes the property of the corporation."). Trademark Manual of Examining Procedure (TMEP) § 504 (2015). Petitioner has variously referred to itself as "The American College of Veterinary Sports Medicine and Rehabilitation" and "American College of Veterinary Sports Medicine and Rehabilitation" (without "The"). *See*, for example, the caption of the amended petition, which includes "The" as part of the name, and Paragraph 5 of the amended petition, which does not (although "the" appears in lower case before the name). In this opinion we have reported the name as the particular piece of supporting evidence does (which shows the name without "The"), but we point out that whether Petitioner's trade name or trademark contains or does not contain the word "The" does not have any effect on our decision.

David Kluft, Nicole Kinsley and Jenevieve J. Maerker of Foley Hoag LLP
    for the American College of Veterinary Sports Medicine and Rehabilitation

Stephen J. Lyons of Klieman & Lyons for Sheila Lyons.

———

Before Seeherman, Quinn, and Heasley,
    Administrative Trademark Judges.

Opinion by Heasley, Administrative Trademark Judge:

Petitioner, the American College of Veterinary Sports Medicine and Rehabilitation, a nonprofit corporation, petitions to cancel Supplemental Register Registration No. 3088963 for THE AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION (in standard characters) for "veterinary education services namely conducting classes, seminars, clinical seminars, conferences, workshops and internships and externships in veterinary sports medicine and veterinary rehabilitation" in International Class 41, owned by Respondent, Sheila Lyons.[2] For the reasons that follow, the petition is granted.

## I.    The Parties' Pleadings

On April 25, 2011, Petitioner petitioned to cancel Respondent's registration on the

---

[2] The registration issued on May 2, 2006 from Application Serial No. 78635662, which was filed May 24, 2005, based on Respondent's allegation of a *bona fide* intention to use the mark in commerce under Section 1(b) of the Trademark Act, and was amended on March 2, 2006 to seek registration on the Supplemental Register based upon Respondent's claim of first use anywhere as of December 20, 1995 and first use in commerce at least as early as June 18, 1996. On April 5, 2012, Respondent filed a Section 8 declaration of use, which was accepted by the U.S. Patent and Trademark Office ("USPTO") on April 13, 2012.

grounds of priority of use and likelihood of confusion, Trademark Act § 2(d), 15 U.S.C.

§ 1052(d), misrepresentation of source, Trademark Act § 14, 15 U.S.C. § 1064, and

fraud.[3] Respondent's Answer denied the salient allegations in the Petition.[4]

This proceeding was suspended for nearly three years during the pendency of a

civil action between the parties in the United States District Court for the District of

Massachusetts.[5] *Lyons et al. v. Gillette, et al.,* Civil Action No. 1:11-CV-12192-WGY

(D. Mass. 2011), (the "District of Massachusetts action"). Upon resumption of the

proceeding, the parties stipulated to Accelerated Case Resolution ("ACR"), which set

a schedule for the parties to file, respectively, an Amended Petition for Cancellation

and Answer thereto "in light of the additional evidence and crystallization of issues

arising from their recently resolved federal litigation...."[6] The Stipulation and its

contemplated schedule were noted and approved by the Board on February 10, 2015.[7]

Petitioner accordingly filed an Amended Petition for Cancellation, claiming in

pertinent part that Petitioner had "Superior Rights in the AMERICAN COLLEGE

OF VETERINARY SPORTS MEDICINE AND REHABILITATION Mark"; that

"Registrant is seeking to claim ownership of the Mark and to use the Mark in the

same trade as Petitioner; that Registrant is not, and was not at the time of the filing

of her application for registration, the rightful owner of the Mark; that Petitioner was

---

[3] 1 TTABVUE.

[4] 4 TTABVUE.

[5] 8 TTABVUE.

[6] 19 TTABVUE.

[7] 20 TTABVUE.

the first entity to use the Mark in commerce; that Registrant began using the mark in commerce only as a result of her association with Petitioner"; and that "Registrant's Registration and use of the Mark is likely to cause confusion in the minds of consumers of veterinary medical services, members of the public, and members of the veterinary profession" in violation of Section 2(d) of the Act. Respondent's Answer denied the salient allegations in the Amended Petition for Cancellation and further asserted that Petitioner's claims were barred by the affirmative defenses of unclean hands, estoppel, fraud and misrepresentation, as well as Petitioner's "theft of the Respondent's registered ACVSMR Mark."[8]

## II. Background

Petitioner is a veterinary specialty organization that educates and certifies veterinarians as specialists in the treatment and rehabilitation of "athletic" animals, such as race horses and racing greyhounds.[9] It is one of many veterinary specialty organizations operating under the auspices of the American Veterinary Medical Association (the "AVMA"), a 150-year-old organization comprising about 84,000 veterinarians.[10] Respondent Sheila Lyons, an equine veterinarian, participated at the outset in the organizing committee that worked to found Petitioner and to seek its recognition by the AVMA. After she was dismissed from that organizing committee, she claimed to own the mark THE AMERICAN COLLEGE OF VETERINARY

---

[8] 23 TTABVUE. The gravamen of the affirmative defenses is that Respondent has prior rights in the subject mark, which Petitioner has misappropriated. Our analysis of the parties' ownership claims comprehends these defenses.

[9] Gillette Decl. ¶ 3, 26 TTABVUE 32.

[10] Sabin Dep. 20 :1-5, 26 TTABVUE 127; Gillette Decl. ¶ 4, 26 TTABVUE 32.

SPORTS MEDICINE AND REHABILITATION individually. This case is, in sum, a trademark ownership dispute between Respondent, a former organizing committee member, and Petitioner, the veterinary specialty organization she helped found.

The case traces its origins to 1999, when Respondent met Dr. Robert Gillette, President of the American Canine Sports Medicine Association, at a conference and discussed the prospect of forming a veterinary specialist organization for treating athletic animals.[11] Dr. Gillette had published a similar proposal for board certification in canine sports medicine in April 1998.[12]

A group of veterinarians who wish to form a veterinary specialist organization must comply with American Veterinary Medical Association procedures—procedures that require them, at the outset, to form an organizing committee and send a letter of intent to an AVMA committee called the American Board of Veterinary Specialties, which would, in turn, help the organizing committee create a petition and proposed by-laws.[13]

Accordingly, between 1999 and 2002, Respondent and Dr. Gillette joined four other veterinarians in forming an organizing committee.[14] Dr. Gillette served as the committee chair.[15] By at least as early as 2002, the committee began using the name

---

[11] Gillette Decl. ¶ 7, 26 TTABVUE 33; Lyons Dep. 36: 4-6, 26 TTABVUE 48.

[12] 26 TTABVUE 216.

[13] *See* Policies and Procedures American Veterinary Medical Association American Board of Veterinary Specialties, May 2003, 26 TTABVUE 164 et seq. Gillette Decl. ¶ 4, 26 TTABVUE 32. Petitioner's Exhibit 30, 26 TTABVUE 604.

[14] Gillette Decl. ¶ 9, 26 TTABVUE 33; Clayton Decl. ¶ 3, 26 TTABVUE 39; Blythe Decl. ¶ 3, 26 TTABVUE 42.

[15] Gillette Decl. ¶ 2, 26 TTABVUE 32.

"American College of Veterinary Sports Medicine and Rehabilitation" as the name of the intended veterinary specialty organization.[16] In the winter of 2002-2003, Respondent participated in drafting the letter of intent, submitted to the Board of Veterinary Specialties, to form that entity.[17] Next, the organizing committee, including Respondent, worked together on a petition to seek recognition of the American College of Veterinary Sports Medicine and Rehabilitation.[18] In early 2004, Respondent drafted proposed bylaws and articles of incorporation for that entity, which she presented to the organizing committee.[19]

Respondent was dismissed from the committee in July 2004 for reasons having no bearing on this case.[20] Nearly a year after her dismissal, in May 2005, she filed an intent-to-use application, Serial No. 78635662, to register the mark THE AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION on the Principal Register for "veterinary education" in her own name. An Office Action refused registration on the Principal Register because the mark was geographically descriptive,[21] so in March 2006 Respondent, through an Examiner's Amendment, amended the application to seek registration on the

---

[16] Gillette Decl. ¶ 10, 26 TTABVUE 33; Clayton Decl. ¶ 5, 26 TTABVUE 39; Blythe Decl. ¶ 4, 26 TTABVUE 42.

[17] Gillette Decl. ¶ 11, 26 TTABVUE 34.

[18] Gillette Decl. ¶ 13, 26 TTABVUE 34.

[19] Gillette Decl. ¶ 14, 26 TTABVUE 34.

[20] Gillette Decl. ¶ 17, 26 TTABVUE 34; Clayton Decl. ¶ 9, 26 TTABVUE 40; Blythe Decl. ¶ 8, 26 TTABVUE 43.

[21] 27 TTABVUE 67.

Supplemental Register.[22] Because an application for registration on the Supplemental Register must be based on actual use, 15 U.S.C. § 1091(a), Respondent filed an amendment alleging that "Applicant is the owner of the mark sought to be registered, and [has been] using the mark in commerce on or in connection with the goods/services identified above" anywhere as of December 1995 and in commerce as of June 1996—well before she joined Petitioner's organizing committee.[23] Respondent's Supplemental Register Registration No. 3088963 issued on May 2, 2006.

Meanwhile, the organizing committee continued to work on the petition, and in November 2008 submitted a first draft to the American Veterinary Medical Association.[24] In 2009, the Association published the petition to its thousands of members in the *Journal of American Veterinary Medicine* and in its electronic newsletter,[25] and in 2010 it granted provisional recognition to Petitioner, which was called the "American College of Veterinary Sports Medicine and Rehabilitation."[26] Petitioner was incorporated as a Colorado non-profit in June 2011, administered its first certification test in 2012, and has since then certified over 115 veterinarians in the sports and rehabilitation specialty.[27] Petitioner has joined with veterinary

---

[22] Examiner's Amendment, March 7, 2006, 27 TTABVUE 64-65.

[23] Amendment to Allege Use, filed January 13, 2006, accepted by the Office on March 8, 2006, 27 TTABVUE 59.

[24] Gillette Decl. ¶ 20, 26 TTABVUE 35.

[25] Gillette Decl. ¶ 21, 26 TTABVUE 35.

[26] Gillette Decl. ¶ 22, 26 TTABVUE 35; Blythe Decl. ¶ 9, 26 TTABVUE 43.

[27] Gillette Decl. ¶¶ 22-25, 26 TTABVUE 35.

colleges to establish 13 active residency programs.[28] Since 2012, it has conducted an annual meeting and continuing education programs together with the American College of Veterinary Surgeons, another veterinary specialty organization recognized by the American Veterinary Medical Association.[29]

Petitioner petitioned to cancel Respondent's subject Supplemental Register Registration on April 25, 2011.[30] It also filed Opposition No. 91206077 to Respondent's Application Serial No. 85486999 to register the same mark, THE AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION on the Principal Register for "educational services, namely, conducting classes, seminars, clinical seminars, conferences, workshops and internships and externships in the fields of veterinary sports medicine and veterinary rehabilitation and distribution of training materials in connection therewith" in International Class 41. The Board proceedings were suspended pending the District of Massachusetts action, in which Respondent alleged *inter alia* "trademark and copyright infringement" of the subject mark, which she claimed to own.[31]

On February 19, 2014, the District Court, having considered Respondent's claims on a "case stated" basis (similar to the Board's Accelerated Case Review, where it considers the evidence adduced in discovery without trial), issued a final order dismissing Respondent's claims, primarily on the ground that her claimed prior use

---

[28] Gillette Decl. ¶ 26, 26 TTABVUE 35.

[29] Gillette Decl. ¶ 27, 26 TTABVUE 35.

[30] 1 TTABVUE.

[31] 5 TTABVUE 7; 8 TTABVUE.

of THE AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION did not cause that merely descriptive term to acquire distinctiveness in the public mind.[32] The Court's order directed the USPTO to refuse registration to Respondent's application on the Principal Register, but did not rule upon the Supplemental Register Registration, as the Court was not persuaded that its continued registration was harmful to Petitioner.[33] The parties appealed from the District Court's ruling, but voluntarily dismissed their appeals when they entered into a partial settlement agreement; in the partial settlement agreement, the parties agreed that the District Court's ruling did not affect the Supplemental Register Registration, but disagreed as to whether it was dispositive or preclusive as to Respondent's application for registration on the Principal Register.[34]

Proceedings were then resumed in the Board's opposition and cancellation proceedings. In Opposition No. 91206077, the Board ruled, on March 30, 2015, that the doctrine of collateral estoppel applied; following the District Court's February 19, 2014 ruling, the Board entered summary judgment, sustained Petitioner/Opposer's opposition, and ordered that Respondent/Applicant's Application Serial No. 85486999 be refused registration.[35]

---

[32] 26 TTABVUE 438 et seq. *Lyons v. American College of Veterinary Sports Medicine and Rehabilitation, Inc. et al.,* 997 F.Supp.2d 92 (D. Mass. Feb. 19, 2014).

[33] *Id.* at 117.

[34] 26 TTABVUE 493.

[35] 26 TTABVUE 498 et seq.

As previously noted, in this remaining cancellation proceeding, the parties stipulated to adopt ACR procedures.[36] The stipulation, which the Board approved,[37] set a schedule for an amended Petition for Cancellation, which Petitioner filed and Respondent answered.[38] The parties were permitted to file briefs similar in form to cross-motions for summary judgment, with their evidence attached in the form of declarations, deposition transcripts and exhibits thereto.[39] Under ACR, the Board may resolve disputed issues of material fact and draw reasonable inferences from the evidence. *See* Trademark Trial and Appeal Board Manual of Procedure ("TBMP") §§ 528.05(a)(2), 702.04 (2015). *See e.g.*, *Conolty v. Conolty O'Connor NYC LLC*, 111 USPQ2d 1302, 1304 (TTAB 2014). The case is fully briefed and ready for decision.

## III.  The Record.

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), Respondent's registration file.

### A. Petitioner's Evidence.

Petitioner submitted the declarations of its counsel, David A. Kluft,[40] authenticating the following exhibits:

---

[36] 19 TTABVUE.

[37] 20 TTABVUE.

[38] Amended Petition for Cancellation, 21 TTABVUE.

[39] 26-34 TTABVUE.

[40] 26 TTABVUE 26; 36 TTABVUE 12.

1.  Declaration of Dr. Robert Gillette.[41]

2.  Declaration of Dr. Hilary Clayton.[42]

3.  Declaration of Dr. Linda Blythe.[43]

4.  Excerpts of deposition of Respondent, taken in the District of Massachusetts action.[44]

5.  Excerpts of deposition of Dr. Elizabeth Sabin of the American Veterinary Medical Association ("AVMA") taken on February 5, 2013.[45]

6.  Deposition exhibit 47 from the deposition of Dr. Elizabeth Sabin, an email with an attachment: the Policies and Procedures of the American Board of Veterinary Specialists as of May 2003.[46]

7.  Deposition exhibit 48 from the deposition of Dr. Elizabeth Sabin.[47]

8.  Front page of the April 1998 newsletter of the American Canine Sports Medicine Association.[48]

9.  Program for First International Symposium on Rehabilitation and Physical Therapy in Veterinary Medicine, Aug. 7-11, 1999, produced by Respondent in the

---

[41] 26 TTABVUE 31.

[42] 26 TTABVUE 38.

[43] 26 TTABVUE 41.

[44] 26 TTABVUE 44. The parties agreed that they could present any facts discovered in the District of Massachusetts action, subject to evidentiary objections. See partial settlement agreement, ¶ 5, 19 TTABVUE 12.

[45] 26 TTABVUE 117.

[46] 26 TTABVUE 162.

[47] 26 TTABVUE 213.

[48] 26 TTABVUE 215.

District of Massachusetts action.[49]

10. Document produced by Petitioner in the District of Massachusetts action.[50]

11. The Letter of Intent submitted to the American Veterinary Medical Association on January 24, 2003.[51]

12. Deposition exhibit 50 from the deposition of Dr. Elizabeth Sabin, Jan. 21, 2004 email from Dr. Sabin to Respondent, attaching copy of American Board of Veterinary Specialties Policies and Procedures Manual.[52]

13. Deposition exhibit 51 from the deposition of Dr. Elizabeth Sabin, June 29, 2004 facsimile from Dr. Sabin to Dr. Gillette regarding Respondent's seminar and fundraising.[53]

14. Email forwarding *Cape Cod Times* article about Respondent to Dr. Gillette, produced by Petitioner in the District of Massachusetts action.[54]

15. Affidavit of Respondent submitted in the District of Massachusetts action.[55]

16. Email correspondence of Dec. 22, 2002, from Respondent to Dr. Gillette, with attachment, produced by Petitioner in the District of Massachusetts action.[56]

---

[49] 26 TTABVUE 217.

[50] 26 TTABVUE 236.

[51] 26 TTABVUE 238.

[52] 26 TTABVUE 251.

[53] 26 TTABVUE 254.

[54] 26 TTABVUE 267.

[55] 26 TTABVUE 271.

[56] 26 TTABVUE 275.

17. Verified complaint filed by Respondent in Massachusetts state court in 2008.[57]

18. Affidavit filed by Respondent in Massachusetts state court in 2008.[58]

19. Deposition exhibits 54 and 55 from the deposition of Dr. Elizabeth Sabin, consisting of Jan. 27, 2009 email regarding need to publish call for public comment for new veterinary specialty organization: the American College of Veterinary Sports Medicine and Rehabilitation, and Feb. 24, 2009 email regarding call for public comments on the American College of Veterinary Sports Medicine and Rehabilitation.[59]

20. Deposition exhibit 17 from the deposition of Respondent, consisting of documents from the online corporate database of the New Hampshire Secretary of State.[60]

21. Certificate of Revival of Homecoming Farm, Inc., downloaded from the online corporate database of the New Hampshire Secretary of State.[61]

22. Respondent's "Equine Excellence Initiative" paper.[62]

23. Court order dated July 31, 2012 dismissing certain counts from the District of Massachusetts action.[63]

---

[57] 26 TTABVUE 279. In the state court complaint, Respondent brought claims against individuals who brought to the organizing committee's attention questions regarding the veracity of her academic credentials. Respondent's claims against these individuals sounded in defamation, intentional infliction of emotional distress, and interference with advantageous business relations.

[58] 26 TTABVUE 321.

[59] 26 TTABVUE 354.

[60] 26 TTABVUE 376.

[61] 26 TTABVUE 387.

[62] 26 TTABVUE 390.

[63] 26 TTABVUE 399.

24. Court order dated February 19, 2014 in the District of Massachusetts action.[64]

25. The parties' partial settlement agreement.[65]

26. Trademark Trial and Appeal Board final decision in Opposition No. 91206077.[66]

27. Excerpts from Purina's Purina Pro Club newsletter and *Today's Breeder* magazine, downloaded from www.purinaproclub.com.[67]

28. Examples of news articles featuring Petitioner and its members, downloaded from LexisNexis.[68]

29. Information about the 8th International Symposium on Veterinary Rehabilitation and Physical Therapy in Corvallis, Oregon.[69]

30. The American Veterinary Medical Association's website information on Veterinary Specialty Organizations, downloaded on August 5, 2015.[70]

31. Webpage containing Bayer HealthCare press release from its 2010 "Legend of the Year" award for equine veterinary professionals.[71]

## B. Respondent's Evidence.

Respondent submitted the following:

---

[64] 26 TTABVUE 438.

[65] 26 TTABVUE 493.

[66] 26 TTABVUE 498.

[67] 26 TTABVUE 508.

[68] 26 TTABVUE 525.

[69] 26 TTABVUE 600.

[70] 26 TTABVUE 604.

[71] 36 TTABVUE 12-18.

1. Affidavit of Respondent, Sheila Lyons, with attached exhibits.[72]

2. Affidavit of Robert Cook, FRCVS, PhD.[73]

3. Affidavit of Charles Liskey, DVM.[74]

4. Affidavit of Michael Savoldi.[75]

5. Affidavit of Marc Paulhus.[76]

6. Affidavit of Linda Smith.[77]

7. Affidavit of June Gilch.[78]

8. Affidavit of counsel Stephen J. Lyons,[79] attaching the following exhibits:

   a. Deposition transcript of Respondent in District of Massachusetts action, vol. I;[80]

   b. Deposition transcript of Respondent in District of Massachusetts action, vol. II;[81]

   c. Deposition transcript of Dr. Robert Gillette, Jan. 30, 2013;[82]

---

[72] 27 TTABVUE 29.

[73] 27 TTABVUE 502.

[74] 27 TTABVUE 510.

[75] 27 TTABVUE 517.

[76] 27 TTABVUE 523.

[77] 27 TTABVUE 527.

[78] 27 TTABVUE 534.

[79] 28 TTABVUE 2.

[80] 28 TTABVUE 559.

[81] 28 TTABVUE 82.

[82] 28 TTABVUE 165.

    d. Deposition transcript of Dr. Robert Gillette, Jan. 29, 2013;[83]

    e. Deposition transcript of Dr. Elizabeth Sabin;[84]

    f. Deposition transcript of Dr. Larry Dee;[85]

    g. Respondent's Answers to Petitioner's Interrogatories in District of Massachusetts action;[86]

    h. Respondent's Answers to American Veterinary Medical Association Interrogatories in District of Massachusetts action;[87] and

    i. Petitioner's responses to Respondent's Interrogatories in District of Massachusetts action.[88]

## IV. Standing.

Standing is a threshold issue that must be proven by the plaintiff in every *inter partes* case. *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999). A party has standing to seek cancellation of a registration if the party believes it is likely to be damaged by the registration. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000). Proof that a petitioner filed a trademark application that was suspended because of a registrant's registration is sufficient. *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F. 2d 1024, 213 USPQ 185,

---

[83] 28 TTABVUE 185.

[84] 28 TTABVUE 286.

[85] 28 TTABVUE 394.

[86] 28 TTABVUE 463.

[87] 28 TTABVUE 496.

[88] 28 TTABVUE 536.

189 (CCPA 1982).

On March 11, 2014, Petitioner filed Application Serial No. 86218298 to register AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION, in standard characters, in connection with "educational services, namely establishing curricula for training for certification in the field of veterinary medicine, and establishing and conducting continuing education seminars, conferences, programs, trainings, classes and discussions in the field of veterinary medicine" in Class 41; and "association services, namely, promoting public awareness of the benefits of working with certified specialists in veterinary medicine; testing, analysis and evaluation of the knowledge, skills and abilities of others for the purpose of certification and re-certification in the field of veterinary medicine" in Class 42.[89] On April 10, 2014, the Office refused registration of Petitioner's mark on the basis that Petitioner's mark was likely to cause confusion with Respondent's registration.[90] Petitioner clearly has a personal stake in the outcome of the proceeding. *UVeritech, Inc. v. Amax Lighting, Inc.*, 115 USPQ2d 1242, 1245 (TTAB 2015).

## V.     Analysis.

Although this proceeding was originally brought on the ground of likelihood of

---

[89] Admitted by Respondent in her answer to the amended petition. 23 TTABVUE 6, ¶ 20.
[90] *Id.* at ¶ 21.

confusion, the true issue is ownership of the mark.[91] *UVeritech,* 115 USPQ2d at 1244.

When, as here, the parties lay claim to the same mark for essentially the same

services, based in part on actions taken in concert, a likelihood of confusion is

inevitable, and the dispute centers on ownership. *Id.* at 1245; *Wonderbread 5 v. Gilles,*

115 USPQ2d 1296, 1301-02 (TTAB 2015); *Nahshin v. Product Source Int'l LLC,* 107

USPQ2d 1257, 1258 (TTAB 2013).[92] Petitioner as the plaintiff in this proceeding must

establish ownership by a preponderance of the evidence. *See, e.g., Metro Traffic*

*Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336, 41 USPQ2d 1369, 1372 (Fed. Cir.

1997).

## A. Standards for Determining Ownership of a Mark.

Only the owner of a mark may apply to register it. 15 U.S.C. § 1051(a). *See, e.g.,*

*Huang v. Tzu Wei Chen Food Co.,* 849 F.2d 1458, 7 USPQ2d 1335, 1336 (Fed. Cir.

1988) (application filed by individual based on claim of actual use of mark void where

corporation owned mark). If an individual applies to register a mark that is used, or

is intended to be used, by a separate entity, such as a corporation or a partnership,

then the individual cannot claim ownership of the mark, and the application is void.

*Id.; American Forests v. Sanders,* 54 USPQ2d 1860, 1864 (TTAB 1999) (intent-to-use

application filed by individual void where the actual entity possessing the bona fide

---

[91] Amended Petition for Cancellation ¶ 26, 21 TTABVUE 7.

[92] In its brief, Respondent alleges that Petitioner has engaged in trademark infringement and unfair competition. 27 TTABVUE 3. Respondent is reminded that such allegations can be raised in a District Court action, but not in a proceeding before the Board, which is empowered to determine only the right to register a mark, not to decide questions of infringement or unfair competition. *Conolty,* 111 USPQ2d at 1310.

intention to use the mark was a partnership comprising the individual and her husband). An application filed by a person who is not the owner of the mark sought to be registered is void *ab initio*. *Id. Accord Hollywood Casino LLC v. Chateau Celeste, Inc.*, 116 USPQ2d 1988, 1992 (TTAB 2015); *UVeritech,* 115 USPQ2d at 1245 n.6. *See also* Trademark Rule 2.71(d) ("An application filed in the name of an entity that did not own the mark as of the filing date of the application is void.").

An application for registration on the Supplemental Register is governed by these same principles. The mark "must be capable of distinguishing *applicant's* goods or services," not those of a separate entity. 15 U.S.C. 1091(a) (emphasis added). "Under 37 C.F.R. § 2.47(d), an intent-to-use applicant is not eligible for registration on the Supplemental Register until the applicant has filed an acceptable allegation of use." TMEP § 815.02 (2015). The allegation of use must include "(1) A verified statement alleging: (i) The applicant believes the applicant is the owner of the mark; (ii) The mark is in use in commerce; (iii) The date of first use of the mark anywhere on or in connection with the goods or services...." 37 C.F.R. § 2.76. Respondent's Amendment to Allege Use alleged exactly that: that she owned the mark, and that she had used it in commerce since at least as early as June 18, 1996. The Supplemental Register Registration issued in reliance upon this averment of ownership.

In cases such as this, where an individual and a corporation have a prior relationship, the issue of whether the individual or the corporate entity is the owner of the mark "must be determined on a case by case basis dependent on the particular

facts adduced in each case." *In re Briggs*, 229 USPQ 76, 77 (TTAB 1986) (citing *Monorail Car Wash Inc. v. McCoy*, 178 USPQ 434, 437-8 (TTAB 1973)).

In making this determination, we are guided by the fundamental purposes of trademark law, which are to secure to the user of a mark the good will it has developed in the public mind, and to secure to the public the ability both to identify and distinguish the user's goods or services from those of others, and to hold the user responsible for the consistency and quality of those goods or services. *See generally BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 35 USPQ2d 1554, 1557 (Fed. Cir. 1995) ("The primary function of a trademark is to identify and distinguish the goods or services of one source from those sold by all others . . . .") *quoted in Conolty*, 111 USPQ2d at 1308 ; *Wrist-Rocket Mfg. Co. v. Saunders*, 379 F. Supp. 902, 907, 183 USPQ 17, 20 (D. Neb. 1974) ("Thus, the policy of trademark protection revolves around protection of the owner's good will developed by him in his efforts to sell the goods to the public. The public identification of the mark in relation to the goods is of clear consequence to the owner of the mark."), *aff'd in part, rev'd in part sub nom. Wrist-Rocket Mfg. Co. v. Saunders Archery Co.,* 516 F.2d 846, 186 USPQ 5 (8th Cir. 1975), *cert. denied* 423 US 870, 187 USPQ 413 (1975); *Restatement (Third) of Unfair Competition* § 9 cmt. c (1995) (describing the source, quality assurance and advertising functions of trademarks, as well as the general public benefit created by protecting trademarks in general).

Consistent with these underlying purposes, the main factors determining ownership of a mark are the parties' intentions or expectations (as objectively

evidenced), who the public associates with the mark, and to whom the public looks to stand behind the quality of goods or services offered under that mark. *See generally Wonderbread 5*, 115 USPQ2d at 1305 ("One prominent commentator has proposed that "[s]uch problems can only be dealt with adequately by giving weight to customer perception and the identification of source and quality policies of trademark law.") (quoting 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:45 (4th ed. 2015)); *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 40 USPQ2d 1149, 1152 (9th Cir.) *as modified,* 97 F.3d 1460 (9th Cir. 1996), *cert. denied* 521 U.S. 1103 (1997). Even though these sources vary in their expression and enumeration of elements to consider, they have these main factors in common: "All three interests—contractual expectation, responsibility for the quality of the goods and services, and consumer perception should play a role in deciding who owns a mark." P. Chestek, *"Who Owns the Mark? A Single Framework for Resolving Trademark Ownership Disputes"* 96 Trademark Reporter 681, 701 (May-June 2006).

## B. Application of Standards to the Present Case.

### 1. Intent.

Respondent's interactions with other veterinarians leading up to formation of the organizing committee were in the nature of proposing and planning the formation of a veterinary specialty organization to be recognized by the AVMA, not providing the services herself. She testified that "it was my intent to conduct the research, develop the educational programs, and based on the outcome of our results, to have it lead, if

it would, to perhaps [AVMA's] recognition of our programs."[93] Before conferring with Dr. Gillette in 1999, Respondent knew that the AVMA recognized veterinary specialty organizations, so she contacted an AVMA representative "to just understand what is that process; how does one do this" and to find out "whether or not this would be something that he felt would go forward, had the potential to go forward."[94] She learned that to fulfill AVMA guidelines, an organizing committee with a minimum of six veterinary members would have to be formed, with some members representing canine medicine.[95] That is why she met with Dr. Gillette, a canine veterinarian: to meet AVMA standards.[96]

When Respondent met with Dr. Gillette in 1999, "what I said was to this effect: You really need to see this plan because this is the way I'm going to go forward. And if you don't agree with this plan, maybe you're right, but then you need to do something on your own. This is the plan that I'm going forward with. I need you to look at it."[97] Respondent and Dr. Gillette joined the organizing committee.[98] Between 2001 and 2003, she became familiar with the AVMA's policies and procedures regarding the establishment and recognition of veterinary specialty organizations.[99]

---

[93] Lyons Dep. 283:9-16, 26 TTABVUE 101.

[94] Lyons Dep. 119:15-24, 120:1-6,12-17, 26 TTABVUE 67-68, 28 TTABVUE 38.

[95] Lyons Dep. 115:8-116:10, 122:13-22, 125:20-126:1, 26 TTABVUE 63-64, 28 TTABVUE 38-39.

[96] *Id.* Lyons Dep. 116:15-22, 117:14-21, 128:16-129:3, 237:19-238:19, 26 TTABVUE 64, 65, 28 TTABVUE 39, 89.

[97] Lyons Dep. 119:6-13, 26 TTABVUE 67.

[98] Lyons Dep. 157:23-158:2, 26 TTABVUE 79-80.

[99] Lyons Dep. 124:7-12, 28 TTABVUE 38.

With Dr. Gillette and other committee members, she helped draft the committee's January 24, 2003 letter of intent to the AVMA Board of Veterinary Specialties.[100] The letter of intent was based on a form provided by Dr. Elizabeth Sabin, an Associate Director with the AVMA and staff consultant to its American Board of Veterinary Specialties; Respondent added a section and Dr. Gillette contributed a section on canine medicine.[101] The letter of intent was signed by Dr. Gillette and listed Respondent as an organizing committee member.[102] Respondent was asked in her deposition:

> Q. ... Do you generally understand that a letter of intent was submitted to the AVMA in January of 2003 by the organizing committee?
>
> A.      Yes.
>
> Q.      And you agreed and consented to the fact that a letter of intent be submitted in January of 2003 to the AVMA for the recognition of a specialty organization in veterinary sports medicine and rehabilitation?
>
> A.      Yes.
>
> Q.      And you at that time agreed and consented that the name of the organization to be recognized would be called The American College of Veterinary Sports Medicine and Rehabilitation?
>
> A.      Yes.[103]

---

[100] Lyons Dep. 141:6-10, 148:21-24, 386:7-12 26 TTABVUE 75, 77, 116. Exhibit 11.

[101] Lyons Dep. 150:10-152:17, 28 TTABVUE 45.

[102] 26 TTABVUE 239 et seq.

[103] Lyons Dep. 156:17-157:8, 26 TTABVUE 78-79.

After the letter of Intent was submitted, Respondent was charged with the responsibility of drafting the organizational documents for the proposed specialty organization.[104] Respondent identified herself as a member of the organizing committee in a telephone conversation with the AVMA's Dr. Sabin,[105] who sent Respondent a copy of the current edition of the American Board of Veterinary Specialties' policies and procedures manual, and emphasized to Respondent that the proposed veterinary specialty organization must take the form of a separate nonprofit corporation.[106] Accordingly, Respondent drafted proposed bylaws and articles of incorporation for the organization, and presented them to the organizing committee.[107] She was asked:

> Q.    And wasn't it your understanding that ultimately at the end of this process that the name of the recognized specialty veterinary organization was going to be The American College of Veterinary Sports Medicine and Rehabilitation, Inc.?
>
> A.    Most likely, yes.[108]

It was not intended that Respondent would control the planned organization individually; in fact, she was not even the organizing committee chair, a position that

---

[104] Lyons Dep. 165:10-16, 28 TTABVUE 48.

[105] Sabin Dep. 18:2-24, 26 TTABVUE 125.

[106] Lyons Dep. 134:13-17, 26 TTABVUE 73. Sabin dep. 250:24-251:1, 26 TTABVUE 145-146. Sabin email of January 21, 2004, 26 TTABVUE 252.

[107] Lyons Dep. 167:8-12, 26 TTABVUE 84.

[108] Lyons Dep. 134:18-23, 26 TTABVUE 73.

was held by Dr. Gillette.[109] When Dr. Gillette placed the name "American College of Veterinary Sports Medicine and Rehabilitation" on the committee's website in 2002, Respondent did not object:

> Q.   In any event, you had no objection to Dr. Gillette's website at that time, did you?
>
> A.   No, I didn't. Well, not the fact that he created a page for the organizing committee's use, no.
>
> Q.   And you had no objection to him using the name and mark on his website, right?
>
> A.   On the website maintained for the purpose of our committee.
>
> Q. Right.
>
> A.   That's correct.[110]

When she worked on the organizing committee, Respondent did not claim prior use of the name "American College of Veterinary Sports Medicine and Rehabilitation" to provide specialized veterinary services, nor did she object to the organizing committee's adoption and use of that name to refer to Petitioner.[111]

After being dismissed from the organizing committee in July 2004, Respondent revealed in her deposition that she harbored a greatly inflated view of her role. In her view, she was the "founding member" of the American College of Veterinary Sports

---

[109] Gillette Decl. ¶ 2, 26 TTABVUE 32.

[110] Lyons Dep. 146:5-21, 148:10-20, 26 TTABVUE 76, 77. *See* Petitioner's website at www.vsmr.org, 27 TTABVUE 317.

[111] Gillette Decl. ¶ 33, 26 TTABVUE 36; Clayton Decl. ¶¶ 7-8, 26 TTABVUE 40; Blythe Decl. ¶¶ 6-7, 26 TTABVUE 42-43.

Medicine and Rehabilitation:[112] As Respondent saw it, she created the American College of Veterinary Sports Medicine and Rehabilitation as an educational project of her own wholly-owned 501(c)(3) nonprofit corporation, Homecoming Farm, Inc.[113] The organizing committee was simply the section of the project seeking AVMA recognition as a board specialty.[114] "[I]t was me forming a committee."[115] In her view, if the other members joined her committee, then they had permission to use the name.[116] The board of Homecoming Farm, Inc. would name the board of the newly incorporated veterinary specialty organization.[117] When she was dismissed from the organizing committee, Respondent claims that she informed its members that they could not use her intellectual property, her coined name, or her materials.[118]

However, Respondent's assertions, and her expansive view of her role, are not borne out by the evidence. Whatever secret reservations Respondent may have harbored were not reflected in her interactions with the other committee members. As Respondent admits, she has no documentation of any written or oral agreement setting terms and conditions on the organizing committee's use of the name American College of Veterinary Sports Medicine and Rehabilitation:

---

[112] Lyons Dep. 186:11-12, 28 TTABVUE 54.

[113] Lyons affidavit ¶ 6, 27 TTABVUE 30.

[114] Lyons Dep. 164: 1-13, 28 TTABVUE 48.

[115] Lyons Dep. 360: 22, 28 TTABVUE 120.

[116] Lyons Dep. 132: 13-15, 28 TTABVUE 40.

[117] Lyons Dep. 404: 19-21, 408:1-23, 28 TTABVUE 131,132.

[118] Lyons Dep. 175:2-8, 182:15-183:8, 429:18-430:3.

Q.    ... Did you ever have any written agreement about the use or your
allowing the use of the name by the organizing committee?

A.    No. Just the agreement that it was, the organizing committee was
representing my work. ... But not written.

Q.    Nothing in writing?

A.    Nothing.

...

Q.    You're not aware of any emails that would document the terms and
conditions upon which the organizing committee could use the
name. Is that right?

A.    That's correct.

Q.    If I understand your testimony correctly, you don't believe there
was ever anything in writing, by email, formal agreement or
anything on that subject?

A.    That's correct.[119]

The other organizing committee members categorically deny her assertions.

Dr. Gillette avers under oath:

> There was never any agreement by which Homecoming Farm would
> control or own any part of the College or its name. During the period Dr.
> Lyons participated in the activities of the Committee, at no time did she
> indicate that she was already using the name "American College of
> Veterinary Sports Medicine and Rehabilitation," nor did she object to its
> use by the organizing committee on that or any other basis.[120]

---

[119] 132:16-133:21, 28 TTABVUE 40.

[120] Gillette Decl. ¶ 33, 26 TTABVUE 36.

Another committee member, Dr. Hilary Clayton, concurs:

> During the period Dr. Lyons participated in the activities of the organizing committee, at no time did she indicate that she was already using the name "American College of Veterinary Sports Medicine and Rehabilitation," nor did she object to its use by the organizing committee on that or any other basis.

> During the time Dr. Lyons participated in the activities of the organizing committee, she did not indicate that she felt that she or some other organization owned the name or any other aspect of the American College of Veterinary Sports Medicine and Rehabilitation. On the contrary, she was simply one member of the organizing committee.[121]

Dr. Clayton explains the organizing committee's reason for selecting Petitioner's name:

> The organizing committee met and decided to call the organization the "American College of Veterinary Sports Medicine and Rehabilitation." This name was modeled in part after other specialty organizations recognized by the AVMA, which began with the words "American College of Veterinary."[122]

A third member of the committee, Dr. Linda Blythe, agrees:

> By 2002 at the latest, we were calling the organization the "American College of Veterinary Sports Medicine and Rehabilitation." This name was modeled in part after other specialty organizations recognized by the AVMA, which began with the words "American College of Veterinary."[123]

> During the period Dr. Lyons participated in the activities of the organizing committee, at no time did she indicate that she was already using the name "American College of Veterinary Sports Medicine and Rehabilitation," nor did she object to its use by the organizing committee on that or any other basis.[124]

---

[121] Clayton Decl. ¶¶ 7, 8, 26 TTABVUE 40.

[122] Clayton Decl. ¶ 5, 26 TTABVUE 39.

[123] Blythe Decl. ¶ 4, 26 TTABVUE 42.

[124] Blythe Decl. ¶ 6, 26 TTABVUE 42.

Dr. Sabin, the point of contact at the AVMA, testified in her deposition that the vast majority of AVMA-recognized veterinary specialty organizations begin with the words "American College of Veterinary."[125] The first time she heard of the "American College of Veterinary Sports Medicine and Rehabilitation" was in the organizing committee's letter of intent.[126] Shortly after receiving the letter of intent, she spoke by telephone with Respondent, as she testified:

> Q. Can you tell us, please, to the best of your recollection, about that first communication that you had with Dr. Lyons?
>
> A. So there was a phone call. I don't' remember much about it other than it was a phone call from Dr. Lyons, and she identified herself as a member of the organizing committee for the proposed new specialty organization the American College of Veterinary Sports Medicine and Rehabilitation. ... [S]he said that she had been charged with developing organizational documents for the group. So we chatted about kind of the Policies and Procedures Manual of the American Board of Veterinary Specialties, what needed to be in organizational documents once a Petition for Recognition was submitted. I pointed her on our website where the current document was. And I also talked about possible sharing with her organizing documents of other specialty organizations. So that was my first phone call,

---

[125] Sabin Dep. 248:4-7, 28 TTABVUE 342.

[126] Sabin Dep. 254:4-9, 28 TTABVUE 344.

only phone call with Dr. Lyons.[127]

Dr. Sabin testified that she was never made aware of Respondent's prior use of the trade name in a 1996 publication.[128] And neither she nor the AVMA was ever informed that Homecoming Farm would have any role in the proposed veterinary specialty organization, which would have to be separately incorporated.[129]

Dr. Gillette's testimony confirms Respondent's interactions with the rest of the organizing committee:

Q. Yesterday you testified that the organizing committee adopted the name The American College of Veterinary Sports Medicine and Rehabilitation at a meeting in Michigan in 2002, is that right?

A. Yes.

Q. During that meeting and at any time after that meeting, did she ever make mention that she believed that she personally owned a mark called The American College of Veterinary Sports Medicine and Rehabilitation?

A. No.

Q. Did she at that meeting or at any time ever subsequent to it ever object to the organizing committee's use of the name The American College of Veterinary Sports Medicine and Rehabilitation?

---

[127] Sabin Dep. 18:2-24, 28 TTABVUE 291.

[128] Sabin Dep. 177:1-7, 28 TTABVUE 326.

[129] Sabin Dep. 250:24-251:1, 251:9-15.

A. No.

...

Q. Did Dr. Lyons, during the time period that this letter of intent was submitted to the AVMA, ever express that in her view there was some conditions or limitations upon the use of the name The American College of Veterinary Sports Medicine and Rehabilitation?

A. No.[130]

Dr. Gillette's testimony regarding Respondent's departure from the committee is telling:

Q. Did Dr. Lyons at any point before leaving the room make it clear to you that, and the other members of the committee, that you did not have her permission to use her trade name or any of her work product without her participation?

Mr. DICKISON: Objection.

A. No.

Q. So before she left the room, she never said anything about your not using anymore the trade name American College of Veterinary Sports Medicine and Rehabilitation, she never said anything about that?

A. No, she didn't.

Q. She never said anything about not using the work product that she had provided to the committee up until that point?

---

[130] Gillette Dep. 23:3-21, 26:11-18, 28 TTABVUE 171-172.

A. No, she did not.[131]

All told, Respondent's history of events is simply not borne out by the evidence. Judging from the actions of all concerned, including Respondent and the other members of the organizing committee, we find that their collective intent, as objectively manifested, was to work together to form a veterinary specialty organization that they named the American College of Veterinary Sports Medicine and Rehabilitation. That organization, Petitioner, would provide the specialized education and certification services, not Respondent. And neither Respondent nor her corporation would control Petitioner. By a preponderance of credible evidence, the factor of intent favors Petitioner.

### 2. Public Association of the Mark With a Source.

Respondent maintains that she was the first to create the name "The American College of Veterinary Sports Medicine and Rehabilitation." She claims to have coined the name in a paper entitled "The Equine Excellence Initiative," written in 1995 and promulgated "to hundreds of veterinarians, horse-owners, clients, members of the horse racing industry and philanthropic organizations in June 1996.[132]

Even if Respondent was the first to conceive of the name,[133] "it is not the act of inventing a trademark which creates prior rights." *Reflange Inc. v. R-Con International*, 17 USPQ2d 1125, 1130 (TTAB 1990). *Accord Hydro-Dynamics Inc. v.*

---

[131] Gillette Dep. 164:9-165:1, 28 TTABVUE 226.

[132] Respondent's brief, 27 TTABVUE 11-12. Cook affidavit ¶ 12, 27 TTABVUE 504. Liskey affidavit ¶¶ 6-9, 27 TTABVUE 510-511.

[133] Lyons Dep. 53:19, 26 TTABVUE 49.

*George Putnam & Co., Inc.*, 811 F.2d 1470, 1 USPQ2d 1772, 1774 (Fed. Cir. 1987) *cited in Conolty*, 111 USPQ2d at 1304 n.4. Rather, it is the *use* of a mark in connection with goods or services that builds an association in the mind of the public between the mark and a source. "It is fundamental that ownership of a mark is acquired by use, not by registration." *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 189 USPQ 630, 635 n.6 (CCPA 1976). Whether this factor is termed good will, secondary meaning, or acquired distinctiveness, it is a key consideration in determining ownership of a mark. *See, e.g., UVeritech,* 115 USPQ2d at 1250; 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:45

In the present case, Respondent concedes that the mark is descriptive. As Respondent testified, "The mark itself, the words were chosen because they were perfectly descriptive of the educational programs, the research that our organization had organized, if you will, within its mission, its objective, its plan for the future. ... So the trade name was not only perfectly descriptive, it precisely represented what needed to be addressed and developed in veterinary medicine...."[134] Her agreement to seek registration of the mark on the Supplemental Register further confirms the mark's descriptiveness. *E.g., In re Future Ads LLC,* 103 USPQ2d 1571, 1574 (TTAB 2012) ("[I]t is well settled as a legal matter that a mark owner's acceptance of registration on the Supplemental Register constitutes an admission that the mark is descriptive at the time of registration...."). As some commentators have put it, "Despite its several advantages, registration on the supplemental register has a

---

[134] Lyons Dep. 103:16-20, 105:17-20, 295:6-13, 28 TTABVUE 33, 104.

distinct *dis*advantage: it constitutes an admission by the registrant that the registered matter was descriptive at the time of registration." A. Gilson LaLonde and J. Gilson, *"The United States Supplemental Register: Solace, Substance, or Just Extinct?"* 103 Trademark Reporter 828, 875 (2013). Petitioner agrees that the mark is descriptive.[135]

The record does not reveal *use* of the subject mark by Respondent in commerce in connection with services sufficient to move it beyond mere descriptiveness—i.e., to create an association in the minds of the purchasing public between the mark and Respondent.

In "The Equine Excellence Initiative,"[136] Respondent wrote in the future tense of her plans for the veterinary specialty organization she envisioned:

> The American College of Veterinary Sports Medicine and Rehabilitation (ACVSMR) is the name for the *project* of Homecoming Farm, Inc. that *will go forward* to provide education to veterinarians; veterinary students; veterinary physical therapists; farriers; researchers; horsemen; equine health care managers and others worldwide. *It will be modeled* after the human medical specialty in its scientific methods, educational structure for professionals and paraprofessionals; *and will maintain* a relationship with physician advisors so that we can take full advantage of ongoing developments in the human specialty field. *The ACVSMR will establish* a system for injury reporting and clinical service data collection and storage utilizing the internet so that epidemiological evidence can be collected and shared with researchers worldwide. *We will act* as advisors to regulatory boards for animal sports so as to ensure that animals are humanely and responsibly managed for the benefit and protection of both the general public's interests and the animals well being and safety. *A main research center will be established and satellite facilities will follow as staffing through our training programs accommodates. Affiliations will be*

---

[135] Gillette Dep. 8:15-19, 28 TTABVUE 167 ("Q. And is it correct that the mark that's at issue in this case, The American College of Veterinary Sports Medicine and Rehabilitation, is descriptive of what your college does? A. Yes.").

[136] 26 TTABVUE 391.

*established* with equine rescue organizations for the purpose of partnering with our educational programs so that students can get hands on experience in the new techniques and so that the horses have an opportunity to recover.[137]  (Emphasis added.)

This is not use in commerce. "A service must be a real activity. A mere idea or concept, e.g., an idea for an accounting organizational format or a recipe for a baked item, is not a service." TMEP § 1301.01(a)(i). The same holds true for early preparations to use a mark. *Aycock Engineering, Inc. v. Airflite, Inc.,* 560 F.3d 1350, 90 USPQ2d 1301, 1308 (Fed. Cir. 2009) (holding that "an applicant's preparations to use a mark in commerce are insufficient to constitute use in commerce"). Even if Respondent made some early use of the mark between its conception and her contact with Dr. Gillette in 1999, that alone does not suffice to establish ownership. "In a dispute over priority of use for a mark requiring secondary meaning, mere priority of use (as for technical trademarks) is insufficient. It is the party who first achieved trademark significance in the mark through secondary meaning who is the senior user of such a mark." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:34. *See Perma Ceram Enterprises, Inc. v. Preco Industries, Ltd.,* 23 USPQ2d 1134, 1136 (TTAB 1992) *cited in Bass Pro Trademarks LLC v. Sportsman's Warehouse, Inc.,* 89 USPQ2d 1844, 1851-52 (TTAB 2008).

Despite Respondent's largely undocumented claims of use of the mark, the record evidence shows, at most, *de minimis* use that never acquired distinctiveness. In her deposition, Respondent was asked:

---

[137] 26 TTABVUE 396, 27 TTABVUE 246. Lyons Affidavit ¶¶ 6, 33, 27 TTABVUE 30, 36. *See* Cook affidavit ¶ 11, 27 TTABVUE 504.

Q. [P]rior to meeting Dr. Gillette, did you spend any money advertising the mark or marketing the mark in terms of newsletters or print media or anything like that?

A. No, not – no.

Q. Would it be safe to say that your use of the mark was as you've described in general, by these various lectures, seminars and educational opportunities that you provided around the United States and internationally; is that correct?

A. Yes, that's correct. I'm not sure that that is the limit as to how I used the mark. I need a little bit more time to think about that, so that may not be a complete answer. It's just my best answer right now.[138]

Respondent does not employ any teachers, and has not as yet acquired any physical premises in which to present her lectures and seminars. Similarly, her nonprofit corporation, Homecoming Farms, Inc., has no employees, volunteers, real estate, or significant assets.[139]

She was asked:

Q. [H]ave you ever made any advertising expenditure to advertise the full mark or the acronym in any television or radio medium?

---

[138] Lyons Dep. 113:10-19, 28 TTABVUE 35.

[139] Lyons Dep. 71:3-9, 79:14-80:1, 142: 28 TTABVUE 25, 27. According to Respondent, Homecoming Farm, Inc. does not claim ownership of the mark. Respondent was asked in her deposition: " Q. … [J]ust to be clear, Homecoming Farm, Inc. does not own the mark, right? That's correct. Q. And has that always been the case? A. Yes." Lyons Dep. 53:11-15, 26 TTABVUE 49. *See also* Lyons affidavit ¶¶ 28-32, 27 TTABVUE 35-36.

A. No.[140]

Q. Is it correct that prior to …January of 2003 you never had a website for yourself or Homecoming Farm, Inc.; is that correct?

A. That's correct. To the best of my recollections, yes.[141]

Respondent and her affiants aver, in a conclusory fashion, that her lectures and seminars, coupled with her publications using the mark, caused the mark to acquire distinctiveness over time.[142] Yet by 1999-2002, the other members of the organizing committee—experienced veterinarians knowledgeable in the field of sports veterinary medicine—were unaware of her use of the name, and believed that they conceived of the name The American College of Veterinary Sports Medicine and Rehabilitation, consistent with the AVMA's naming convention.[143] By 2003, Dr. Sabin, the AVMA official who acted as the liaison for the American Board of Veterinary Specialties, was not aware of Respondent's prior use of the name, and first learned of the name from the organizing committee's letter of intent.[144] In 2006, Respondent sought registration of the mark on the Supplemental Register, which

---

[140] Lyons Dep. 69:11-14, 28 TTABVUE 24.

[141] Lyons Dep. 111:12-18, 28 TTABVUE 35. Even though Respondent registered ACVSMR.org and other domain names in 2001, she did not take the next step of putting content on there. Lyons Dep. 146:5-14, 28 TTABVUE 44.

[142] Lyons Aff. ¶¶ 10-13, 90-94, 100; Cook Aff. ¶¶ 13-15, 27 TTABVUE 506; Liskey Aff. ¶¶ 10-13, 27 TTABVUE 512; Savoldi Aff. ¶¶ 13-14, 18, 27 TTABVUE 520-521; Paulhus Aff. ¶¶ 7-9, 14, 27 TTABVUE 534-526; Smith Aff. ¶¶ 8-16, 18, 27 TTABVUE 529-31; Gilch Aff. ¶¶ 9-11, 17, 21, 23, 26-27, 27 TTABVUE 536-539.

[143] Clayton Decl. ¶¶5-7, 26 TTABVUE 39-40; Blythe Decl. ¶¶ 4-7, 26 TTABVUE 42-42; Gillette Decl. ¶¶ 5, 8, 22, 26 TTABVUE 33, 35; Gillette Dep. 23:3-21, 36:5-37:3, 65:14-66:15, 28 TTABVUE 171, 174; 201-202.

[144] Sabin Dep. 177:2-7, 254:4-9, 28 TTABVUE 326, 344.

tacitly admitted that it was descriptive. And in 2014, the U.S. District Court for the District of Massachusetts found that Respondent's claimed mark had not acquired distinctiveness. *Lyons v. American College of Veterinary Sports Medicine and Rehabilitation, Inc. et al.,* 997 F.Supp.2d 92 (D. Mass. 2014). We agree with the District Court of Massachusetts' reasoning in this respect, even though it is not preclusive.[145] In the words of the predecessor to our reviewing court, "However, the record nowhere shows that the words have become distinctive of the [Respondent's] services in commerce (see Section 2(f) of the Trademark Act) or that they have acquired any such secondary meaning in the minds of the public." *In re The Standard Oil Co.,* 275 F.2d 945, 125 USPQ 227, 228 (CCPA 1960).

Between 1999 and 2004, Respondent's actions, undertaken in concert with the rest of the organizing committee, inured to the benefit of Petitioner. *See Conolty,* 111 USPQ2d at 1310 n.14 ("To be clear, the record does not reveal that use of FAIRWAY FOX prior to January 2012 was sufficient to create an association in the minds of the purchasing public between the mark and the FAIRWAY FOX goods. ...However, even assuming use analogous to trademark use prior to January 2012, that use was by and for the benefit of the partnership or joint venture between Ms. Conolty and Ms. O'Connor.") (citations omitted). From that point forward, Petitioner's use of the mark resulted in acquired distinctiveness of the mark in Petitioner.

---

[145] The Court's ruling does not warrant application of the collateral estoppel/issue preclusion doctrine in this cancellation proceeding, as it did not purport to rule on the Supplemental Register Registration, and the parties dismissed their appeals from the Court's ruling, agreeing that it would not dispose of this proceeding. See Petitioner's exhibits 24 and 25, 26 TTABVUE 438, 493. Nonetheless, we find the Court's reasoning persuasive.

Respondent testified:

Q. So would it be fair to say that Dr. Gillette putting the mark on his

website in December of 2002 would have been likely the first time that the

name or mark American College of Veterinary Sports Medicine and

Rehabilitation actually went online?

A. That may be true.[146]

In 2009, the AVMA published the organizing committee's petition to its thousands

of members in the *Journal of American Veterinary Medicine* and in its electronic

newsletter, so that its members could comment on the petition.[147] Petitioner received

provisional recognition from the AVMA in May 2010.[148] Since then, it has certified

115 veterinarians throughout the country and has established 13 active residency

programs with veterinary colleges.[149] Petitioner continues to use the mark

AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND

REHABILITATION in connection with all of its activities.[150]

Since Petitioner received the AVMA's provisional recognition, no students have

enrolled in Respondent's program.[151] Because Petitioner is listed as a recognized

---

[146] Lyons Dep. 146:5-21, 148:10-20, 26 TTABVUE 76, 77. *See* Petitioner's website at www.vsmr.org, 27 TTABVUE 317.

[147] Gillette Decl. ¶ 21, 26 TTABVUE 35. Sabin Dep. 253:19-254:2, 26 TTABVUE 148-149. Sabin emails of Jan. 27 and Feb. 24, 2009 regarding public comment period on American College of Veterinary Sports Medicine and Rehabilitation, with attachments 26 TTABVUE 355 et seq.

[148] Sabin Dep. 65:13-21, 26 TTABVUE 130. Gillette Decl. ¶ 22, 26 TTABVUE 35.

[149] Gillette Decl. ¶¶ 25-26, 26 TTABVUE 35.

[150] Gillette Dep. 212:11-24, 28 TTABVUE 238.

[151] Lyons Dep. 72:3-23, 28 TTABVUE 25.

specialty on the AVMA's website,[152] the 80,000-plus veterinarians who comprise the AVMA are directed to Petitioner, not Respondent.[153] The organizing committee's efforts, in which Respondent participated, led to Petitioner's recognition, first by the AVMA, and then by the relevant public of veterinarians, who associate the mark with Petitioner. This factor also favors Petitioner.

### 3. Provision of Consistency and Quality.

We next turn to the third factor indicating ownership of a mark: the party to whom the public looks to stand behind the consistency and quality of services offered under the mark. *See generally Wonderbread 5*, 115 USPQ2d at 1305; 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:45.

Since it received its provisional recognition, Petitioner has provided educational and certification services to veterinarians who, upon certification, may hold themselves out as diplomates in an AVMA-approved specialty.[154] Petitioner's very name, "American College of Veterinary Sports Medicine and Rehabilitation," carries with it the AVMA's seal of approval, in the eyes of the veterinary community.[155] Even in 1995-96, Respondent was aware that the AMVA had recognized veterinary

---

[152] Gillette Decl. ¶ 30, 26 TTABVUE 35.

[153] Lyons Dep. 196:3-6, 28 TTABVUE 56.

[154] Gillette Decl. ¶¶ 22-25, 26 TTABVUE 35. Sabin Dep. 245:17-24, 26 TTABVUE 139.

[155] Gillette Decl. ¶ 5, 26 TTABVUE 33; Clayton Decl. ¶¶ 5-6, 26 TTABVUE 39-40; Blythe Decl. ¶¶ 4-5, 26 TTABVUE 42. Sabin Dep. 248:4-7, 26 TTABVUE 143 (vast majority of veterinary specialty organization names begin with the words "American College of Veterinary")

specialty organizations beginning with the words "American College of Veterinary."[156] Respondent was asked at deposition:

> Q. Are you aware of any organization starting with the words "American College of Veterinary" that are not affiliated with the AVMA other than your own organization?
>
> A. No.[157]

As a result, members of the veterinary profession will look to Petitioner to educate and certify those who qualify for this specialty. And members of the public who use these specialized services will rely upon Petitioner's certification as evidence of a particular veterinary practitioner's expertise. Thus, the relevant members of the purchasing public—veterinarians and animal owners seeking certified specialists—will look to Petitioner to provide these services and stand behind the quality of its education and certification services. They would not look to Respondent, who left the American Veterinary Medical Association in 2005, abandoned all thought of obtaining a certification from that Association, has no students enrolled in educational courses offered under the mark, and has no certification program.[158] This development was, once again, foreseeable when Respondent left the organizing committee. This factor weighs heavily in favor of Petitioner.

---

[156] Lyons Dep. 294:16-24, 28 TTABVUE 103.

[157] Lyons Dep. 295:1-5, 26 TTABVUE 104.

[158] Lyons Dep. 72:8-23, 96:23-97:5, 192:19-193:11; 219:20-220:9. 26 TTABVUE 54, 58-59, 88-89, 94. Lyons affidavit ¶ 51, 27 TTABVUE 40.

## VI.   Conclusion

All of the indicia of ownership—intent, public association, and quality control—point to Petitioner, not Respondent. Taking the record evidence as a whole, including the portions of the record evidence we have not expressly mentioned, we find by a preponderance of the evidence that Respondent has never owned the mark, and her underlying application was void *ab initio*.

**Decision:** The petition to cancel is granted and Registration No. 3088963 will be cancelled in due course.

Form PTO 55 (12-80)

**U.S. DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**

June 22, 2016
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries

in the file of the trademark cancellation proceeding and registration file identified below.

The list was taken from the TSDR and TTABvue electronic databases of this Office and

comprises the record before the United States Patent and Trademark Office.

**The American College of Veterinary Sports Medicine and Rehabilitation**

**v.**

**Shelia Lyons**

**Cancellation No.: 92053934**

**Serial No.: 78/635,662 (Reg. No. 3,088,963)**



By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Certifying Officer*

## HISTORY OF CANCELLATION NO. 92053934

| DATE | DESCRIPTION |
|------|-------------|
| 04/25/2011 | PETITION FOR CANCELLATION |
| 04/26/2011 | ORDER: NOTICE AND TRIAL DATES SENT; ANSWER DUE |
| 06/06/2011 | RESPONDENT'S ANSWER TO PETITION FOR CANCELLATION |
| 01/19/2012 | RESPONDENT'S MOTION TO SUSPEND PROCEEDINGS WITH STATEMENT OF REASONS AND LEGAL AUTHORITIES |
| 01/19/2012 | EXHIBITS TO MOTION TO SUSPEND – PART 1 |
| 01/19/2012 | EXHIBITS TO MOTION TO SUSPEND – PART 2 |
| 04/12/2012 | ORDER: PROCEEDINGS SUSPENDED PENDING DISPOSITION OF CIVIL ACTION |
| 04/15/2013 | ORDER: RESPONSE DUE |
| 05/31/2013 | REPORT ON STATUS OF SUSPENDED PROCEEDINGS PURSUANT TO TTAB ORDER |
| 06/11/2013 | ORDER: PROCEEDINGS REMAIN SUSPENDED |
| 03/11/2014 | STATUS REPORT BY PETITIONER |
| 03/19/2014 | RESPONDENT'S CHANGE OF CORRESPONDENCE ADDRESS |
| 03/19/2014 | RESPONDENT'S STATUS REPORT ON THE PENDING PROCEEDINGS BEFORE THE UNITED STATES DISTRICT COURT |
| 11/04/2014 | PETITIONER'S NOTICE OF APPEARANCE |
| 11/20/2014 | REGISTRANT'S REPORT OF STATUS AND REQUEST TO RESUME PROCEEDINGS |
| 12/10/2014 | PETITIONER'S RESPONSE TO REGISTRANT'S REPORT OF STATUS AND REQUEST TO RESUME PROCEEDINGS |
| 01/29/2015 | ORDER: PHONE CONFERENCE SCHEDULED FOR 02/10/2015 |
| 02/09/2015 | STIPULATION FOR ACCELERATED CASE RESOLUTION |
| 02/10/2015 | ORDER: STIPULATION NOTED AND APPROVED |
| 03/27/2015 | AMENDED PETITION FOR CANCELLATION |
| 04/17/2015 | STIPULATED MOTION FOR EXTENSION OF TIME |
| 05/04/2015 | RESPONDENT'S ANSWER AND OPPOSITION TO AMENDED PETITION FOR CANCELLATION |
| 06/25/2015 | STIPULATED MOTION FOR EXTENSION OF TIME |
| 07/07/2015 | ORDER: EXTENSION OF TIME GRANTED |
| 08/07/2015 | PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF |
| 08/07/2015 | RESPONDENT'S MOTION FOR SUMMARY JUDGMENT |

| DATE | DESCRIPTION |
|---|---|
| 08/07/2015 | AFFIDAVIT OF COUNSEL IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT |
| 08/10/2015 | RESPONDENT'S EXHIBITS – PART 1 |
| 08/10/2015 | RESPONDENT'S EXHIBITS – PART 2 |
| 08/10/2015 | RESPONDENT'S AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| 08/10/2015 | RESPONDENT'S DEPOSITION TRANSCRIPT |
| 08/28/2015 | STIPULATED MOTION FOR EXTENSION OF TIME |
| 09/18/2015 | PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT |
| 09/18/2015 | RESPONDENT'S MEMORANDUM OF FACT AND LAW IN OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT |
| 09/23/2015 | RESPONDENT'S MEMORANDUM OF FACT AND LAW IN OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT; REGISTRANT'S RESPONSE TO PETITIONER'S SO-CALLED STATEMENT OF UNDISPUTED FACTS |
| 09/30/2015 | ORDER: EXTENTION OF TIME GRANTED |
| 10/09/2015 | PETITIONER'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT |
| 10/09/2015 | RESPONDENT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| 03/17/2016 | BOARD DECISION |
| 05/12/2016 | NOTICE OF APPEAL TO THE FEDERAL CIRCUIT |

**PROSECUTION HISTORY OF APPLICATION SERIAL NO. 78635662**
**(REG. NO. 3088963)**

| DATE | DESCRIPTION |
|---|---|
| 05/24/2005 | APPLICATION |
| 05/24/2005 | DRAWING |
| 12/23/2005 | XSEARCH SEARCH SUMMARY |
| 12/23/2005 | NON-FINAL OFFICE ACTION |
| 01/13/2006 | AMENDMENT TO ALLEGE USE |
| 01/13/2006 | SPECIMEN |
| 01/13/2006 | RESPONSE TO OFFICE ACTION |
| 02/27/2006 | FINAL OFFICE ACTION |

| DATE | DESCRIPTION |
|---|---|
| 03/07/2006 | XSEARCH SEARCH SUMMARY |
| 03/07/2006 | EXAMINER'S AMENDMENT |
| 03/08/2006 | TRADEMARK SNAP SHOT PUBLICATION STYLESHEET |
| 03/08/2006 | NOTICE OF ACCEPTANCE OF AMENDMENT TO USE |
| 05/02/2006 | REGISTRATION CERTIFICATE |
| 04/05/2012 | DECLARATION OF USE AND/OR EXCUSABLE NONUSE OF MARK IN COMMERCE UNDER SECTION 8 |
| 04/05/2012 | SECTION 8 SPECIMEN |
| 04/05/2012 | CHANGE OF CORRESPONDENCE ADDRESS |
| 04/14/2012 | NOTICE OF ACCEPTANCE |
| 05/02/2015 | COURTESY E-REMINDER OF SEC. 8/SEC. 9 |
| 04/14/2016 | COMBINED DECLARATION OF USE AND/OR EXCUSABLE NONUSE/APPLICATION FOR RENEWAL OF REGISTRATION OF A MARK UNDER SECTIONS 8 & 9 |
| 04/14/2016 | SECTION 8/9 SPECIMEN |
| 04/14/2016 | CHANGE OF CORRESPONDENCE ADDRESS |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

NOTICE FORWARDING CERTIFIED LIST has been served on counsel for the Appellant and

the Appellee this 22nd day of June, 2016, as follows:

> Stephen Lyons
> Klieman & Lyons
> One International Place
> 8th Floor
> Boston, MA 02110
> *Attorney for Appellant*
>
> David Kluft
> Foley Hoag LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> *Attorney for Appellee*

By: _____
  **Krishawn D. Graham**
  Paralegal Specialist